Taft, J.
Both parties agree that the only question to be determined in the instant case is whether Section 25-2-3 of the Toledo Municipal Code conflicts with the general laws of the state. If that section of the Toledo Municipal Code is a police regulation and does so conflict, then the limitations of Section 3 of Article XVIII of the Ohio Constitution will prevent it from being effective.
It is apparently contended in a brief filed in this case on behalf of certain amici curiae that that section of the Toledo Municipal Code is not a police regulation. As a basis for this contention, it is stated that a license is merely a device for regulation. However, the power to license is a part of the power to regulate. It seems obvious therefore that a municipal ordinance prohibiting the doing of something without a municipal license to do it would be a municipal police regulation. Calling it a device for regulation does not prevent it from being such a regulation.
In our opinion, any municipal ordinance, which prohibits the doing of something without a municipal license to do it, is a police regulation within the meaning of Section 3 of Article XVIII of the Ohio Constitution. It follows that Section 25-2-3 of the Toledo Municipal Code, prohibiting the sale of beer and other intoxicating liquors in Toledo without a Toledo license to do so, is a police regulation.
*447 As Section 4303.27 states, a 0-2 permit issued pursuant to the Ohio Liquor Control Act authorizes the person to whom it is issued to carry on at the place specified therein the business of selling beer and other intoxicating liquors as that business is described in Section 4303.12, Revised Code.
It would seem to follow that any municipal ordinance which prohibits the carrying on by such person of such business at that place without a city license to do so, that is obtainable only upon paying a fee, would conflict with Sections 4303.12 and 4303.27, Revised Code.
Thus, in Village of Struthers v. Sokol (1923), 108 Ohio St., 263, 140 N. E., 519, paragraph two of the syllabus reads:
“In determining whether an ordinance is in ‘conflict’ with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. ’ ’
In the instant case, the ordinance forbids and prohibits what the statute permits and licenses. Even though plaintiff has a state license authorizing him to carry on the business of selling beer in Toledo, the ordinance prohibits him from doing so if he does not pay for and secure a municipal license to do so.
In Niehaus, Bldg. Inspr., v. State, ex rel. Board of Education of City School Dist. of City of Dayton (1924), 111 Ohio St., 47, 144 N. E., 433, paragraph two of the syllabus reads:
“The General Assembly * * * having enacted a general law requiring the building inspection departments of municipalities having a regularly organized building inspection department to approve plans for the construction of public school buildings erected within such municipalities, a municipality is without power to thwart the operation of such general law by the enactment of an ordinance requiring the payment of a-fee as a condition precedent to compliance therewith.”
The ordinance involved in that case had apparently been enacted independently of and without reference to the statute and was a comprehensive ordinance providing for a building inspection department to approve plans for the construction of various kinds of buildings (not specifically public school buildings) erected in the municipality and for the issuance of building permits upon payments of certain fees therefor. This court *448 affirmed a judgment which allowed a writ of mandamus requiring issuance of a permit without payment of the fee required by the provisions of the ordinance.
In our opinion therefore Section 25-2-3 of the Toledo Municipal Code is in conflict with Sections 4303.12 and 4303.27, Revised Code. We believe that further support for this opinion may be found in State, ex rel. McElroy, Atty. Genl., v. City of Akron (1962), 173 Ohio St., 189, 181 N. E. (2d), 26, and Neil House Hotel Co. v. City of Columbus (1944), 144 Ohio St., 248, 58 N. E. (2d), 665. Cf. Union Sand & Supply Corp. v. Village of Fairport (1961), 172 Ohio St., 387, 176 N. E. (2d), 224. See also Schneider man, an Infant, v. Sesanstein (1929), 121 Ohio St., 80, 167 N. E., 158, 64 A. L. R., 981. The ease of City of Fremont v. Keating (1917), 96 Ohio St., 468, 118 N. E., 114, relied upon in the brief of the amici curiae, does not even touch this problem. It holds that a municipality could enact an ordinance prohibiting the same conduct prohibited by statute. But cf. City of Cleveland v. Betts (1958), 168 Ohio St., 386, 154 N. E. (2d), 917, holding that a municipality could not even do this where the conduct prohibited had been made a felony by that statute. The' Keating case did not involve, as does the instant case, a municipal ordinance prohibiting someone from doing something he had been licensed by the state to do unless and until he paid for and secured a municipal license to do it.
We are, however, unable to reconcile this part of our opinion with paragraph three of the syllabus of Stary v. City of Brooklyn (1954), 162 Ohio St., 120, 121 N. E. (2d), 11. Neither can we reconcile that syllabus paragraph with paragraph two of the syllabus of Village of Struthers v. Sokol, supra (108 Ohio St., 263), or with paragraph two of the syllabus or the decision in Niehaus v. State, ex rel. Board of Education, supra (111 Ohio St., 47).
Perhaps there are statutes applicable to housing (see page 136 in dissenting opinion in Stary case) or other reasons applicable in that kind of a case which might justify a different conclusion in that case from one in this on the question as to whether one having a state license can be required to pay for and secure a municipal license. Cf. Union Sand & Supply Corp. v. Village of Fairport, supra (172 Ohio St., 387). Also, it appears from the *449 report of the St ary case (pages 129, 130) that the right to require a municipal license was not directly involved. The portion of the ordinance principally attacked in that case prohibited certain action and conduct, and, since a penalty was provided for violation of that section, could have been enforced even if the separable licensing provision thereof had been declared invalid.
Toledo contends that this court previously sustained the validity of Section 25-2-3 of the Toledo Municipal Code in Commodore Perry Hotel Co. v. City of Toledo (1934), 128 Ohio St., 644, 193 N. E., 74. The report of that case does not disclose the questions presented and merely orders a dismissal for “the reason that no debatable constitutional question is involved in said cause.” In effect, we are holding that, because of the Constitution, Section 25-2-3 of the Toledo Municipal Code is invalid. We believe it sufficient to state that, if the questions involved in the instant case had been presented to this court in the Commodore Perry case, it should not have been summarily dismissed as it was.
We do not believe that it is necessary in the instant case to consider the validity of any other provisions of the ordinances of Toledo purporting to regulate the business of selling beer and intoxicating liquors. Neither do we deem it necessary to consider whether municipal zoning regulations could have any effect on that business.
Our conclusion is that, by reason of the provisions of Section 3 of Article XVIII of the Ohio Constitution, Section 25-2-3 of the Toledo Municipal Code is invalid because it is in conflict with Sections 4303.12 and 4303.27, Revised Code.

Judgment reversed.

Zimmerman, Matthias, Bell, Collier and O’Neill, JJ., concur.
Weygandt, C. J., concurs in the judgment.
Collier, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.